FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Nov 12, 2026

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| CHAD B.,<br>Plaintiff,<br>v.<br>COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION,<br>Defendant. | No. 1:24-CV-03099-SAB<br><br>**ORDER REVERSING THE DECISION OF COMMISSIONER** |

Plaintiff brings this action seeking judicial review of the Commissioner of Social Security's final decision denying his application for Title II and XVI benefits. Plaintiff is represented by D. James Tree. The Commissioner is represented by John Drenning and Joseph P. Derrig. Pending before the Court are Plaintiff's Opening Brief, ECF No. 7, the Commissioner's Brief, ECF No. 9, and Plaintiff's Reply Brief, ECF No. 10.

After reviewing the administrative record, briefs filed by the parties, and applicable case law, the Court is fully informed. For the reasons set forth below, the Court reverses the Commissioner's decision and remands for an immediate award of benefits.

## I. Jurisdiction

On July 8, 2021, Plaintiff filed applications for Title II disability benefits and Title XVI for supplemental social security income. Both listed an alleged onset date of March 15, 2014, that was later amended to August 1, 2017. Plaintiff's

applications were denied initially and on reconsideration. Plaintiff timely requested a hearing. A telephonic hearing was held on July 13, 2023. Plaintiff participated and was represented by attorney Robert E. Tree and Justin Jerez. Elizabeth Broten, a vocational expert, was also present at the hearing. On October 2, 2023, the ALJ found Plaintiff was not disabled.

Plaintiff requested review by the Appeals Council, and it denied the request on May 14, 2024. The Appeals Council's denial of review makes the ALJ's decision the "final decision" of the Commissioner of Social Security, which this Court is permitted to review. 42 U.S.C. §§ 405(g), 1383(c)(1)(3).

Plaintiff filed a timely appeal on July 12, 2024. ECF No. 1. The matter is before this Court pursuant to 42 U.S.C. § 405(g).

## II. Five-Step Sequential Evaluation Process

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A), 1382c(a)(3)(A). A claimant shall be determined to be under a disability only if their impairments are of such severity that the claimant is not only unable to do their previous work, but cannot, considering claimant's age, education, and work experiences, engage in any other substantial gainful work that exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). The Commissioner has established a five-step sequential evaluation process to determine whether a person is disabled in the statute. *See* 20 C.F.R. § 404.1520(a)(4)(i)–(v), 416.920(a)(4)(i)–(v).

**Step One**: Is the claimant engaged in substantial gainful activities? *Id.* § 404.1520(a)(4)(i), 416.920(a)(4)(i). Substantial gainful activity is work done for pay and requires compensation above the statutory minimum. *Keyes v. Sullivan*, 894 F.2d 1053, 1057 (9th Cir. 1990). If the claimant is engaged in substantial

activity, benefits are denied. *Id.* § 404.1520(b), 416.920(b). If the claimant is not, the ALJ proceeds to step two.

**Step Two**: Does the claimant have a medically-severe impairment or combination of impairments? *Id.* § 404.1520(a)(4)(ii), 416.920(a)(4)(ii). A severe impairment is one that lasted or must be expected to last for at least 12 months and must be proven through objective medical evidence. *Id.* §§ 404.1509, 416.909. If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied. *Id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the impairment is severe, the evaluation proceeds to the third step.

**Step Three**: Does the claimant's impairment meet or equal one of the listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity? *Id.* § 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. *Id.* § 404.1520(d), 416.920(d). If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step.

Before proceeding to the fourth step, the ALJ must first determine the claimant's residual functional capacity (RFC). An individual's residual functional capacity is their ability to do physical and mental work activities on a sustained basis despite limitations from their impairments. *Id.* § 404.1545(a)(1), 416.945(a)(1). The RFC is relevant to both the fourth and fifth steps of the analysis.

**Step Four**: Does the impairment prevent the claimant from performing work they have performed in the past? *Id.* § 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant is able to perform their previous work, they are not disabled. *Id.* § 404.1520(f), 416.920(f). If the claimant cannot perform this work, the evaluation proceeds to the fifth and final step.

**Step Five**: Is the claimant able to perform other work in the national

economy in view of their age, education, and work experience? *Id.* § 404.1520(a)(4)(v), 416.920(a)(4)(v). The initial burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Tackett v. Apfel*, 108 F.3d 1094, 1098 (9th Cir. 1999). This burden is met once a claimant establishes that a physical or mental impairment prevents him from engaging in her previous occupation. *Id*. At step five, the burden shifts to the Commissioner to show that the claimant can perform other substantial gainful activity. *Id.*

**III. Standard of Review**

The Commissioner's determination will be set aside only when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole. *Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992) (citing 42 U.S.C. § 405(g)). Substantial evidence is "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 401 (1971), but "less than a preponderance," *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401.

A decision supported by substantial evidence will be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secr'y of Health & Human Servs.*, 839 F.2d 432, 433 (9th Cir. 1988). An ALJ is allowed "inconsequential" errors as long as they are immaterial to the ultimate nondisability determination. *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006). The court must uphold the ALJ's denial of benefits if the evidence is susceptible to more than one rational interpretation, one of which supports the decision of the administrative law judge. *Batson v. Barnhart*, 359 F.3d 1190, 1193 (9th Cir. 2004). It "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir.

2017) (quotation omitted). "If the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." *Matney*, 981 F.2d at 1019.

**IV. Statement of Facts**

The facts have been presented in the administrative record, the ALJ's decision, and the briefs to this Court. Only the most relevant facts are summarized here.

At the time of the hearing, Plaintiff was 39 years old and lived with his fiancé and their five-year-old daughter. He had a difficult childhood. Due to poor social adjustment, Plaintiff dropped out of grade school in the sixth grade. He was home schooled most of his life. He later attained his General Education Diploma (GED). He tried to attend college but had to drop out because it was too much for him. Plaintiff witnessed his father's death when he was 14 years old, which has continued to be traumatic for Plaintiff.

In 2004, he worked part-time at Burger King. In 2004 and 2005, he worked part-time at Bob's Super Saver, "gathering carts from the parking lot." In 2006, his brother-in-law got him a job at a shipyard where he was a sweeper, a painter and eventually, worked his way up to plumbing. He worked at the shipyard until 2012. In 2015, he attempted to return to that job but quit after a few weeks. He tried to go back again in 2016 but quit after only a couple of days. From 2012 through 2015, he worked at Boeing assembling interior parts for airplanes. He ultimately quit due to the constant changes and his inability to "establish anything." He does not have any substantiated work history since that time.

He suffers from anxiety, depression, PTSD, autism, and ADHD. Plaintiff has difficulty leaving his house and interacting with others. When he does leave the house, he experiences severe anxiety, which sometimes includes panic attacks. His fiancé often goes with him when he leaves the house, and she also does most of the shopping and errands. He has engaged in therapy and has had some success. The various medications he has taken did not effectively address his symptoms.

## V. The ALJ's Findings

The ALJ issued an opinion affirming denial of benefits. AR 17-32. First the ALJ found that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2020. AR 20. The ALJ went on to make the following findings:

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since August 1, 2017, the amended alleged onset date. AR 20.

At step two, the ALJ identified the following severe impairments: anxiety disorder, depressive disorder, post-traumatic stress disorder (PTSD), attention deficit hyperactivity disorder (ADHD). AR 20.

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. AR 20.

At step four, the ALJ concluded that Plaintiff has an RFC to perform:

> A full range of work at all exertional levels but with the following nonexertional limitations: he can have occasional interaction with the public and coworkers. He cannot engage in tandem tasks. There can be occasional changes in work setting.

AR 23.

At step five, the ALJ found that Plaintiff cannot perform past relevant work as an airplane assembly mechanic and pipefitter. AR 30. The ALJ further found, based on Plaintiff's age, education, work experience, and RFC, there were other jobs that existed in significant numbers in the national economy that he could perform, including industrial cleaner, dishwasher, and cleaner II. AR 31.

Consequently, the ALJ found that Plaintiff was not disabled.

## VI. Issues

1. Whether the ALJ properly assessed Plaintiff's testimony?
2. Whether the ALJ properly assessed the medical opinion evidence?

## VII. Discussion

In determining that Plaintiff was not disabled, the ALJ made the following findings: (1) that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the medical evidence and other evidence in the record; and (2) that Dr. Kester and Dr. Comrie's residual functional capacity assessments were the most persuasive medical opinions of record.

**1. Assessment of Plaintiff's Testimony**

When determining whether a claimant's testimony regarding subjective pain or symptoms is credible, the ALJ engages in a two-step analysis. *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id*. (citation and quotation omitted). If the claimant satisfies the first step of the analysis, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of their symptoms "only by offering specific, clear and convincing reasons for doing so." *Id*. (citation and quotation omitted). "This is not an easy requirement to meet: The clear and convincing standard is the most demanding required in Social Security cases." *Id.* (citation and quotation omitted). That said, if the ALJ's credibility finding is supported by substantial evidence in the record, the Court may not engage in second-guessing. *Thomas v. Barnhar*t, 278 F.3d 947, 959 (9th Cir. 2002).

An ALJ may consider a range of factors in assessing credibility, including "(1) ordinary techniques of credibility evaluation, such as the claiman''s reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014).

Here, ALJ determined that Plaintiff's primary complaint was that his severe anxiety "prevents him from leaving the house and even makes it difficult for him to go outside on his porch." The ALJ discounted Plaintiffs allegations and testimony because they were "not objectively verifiable, as well as "contradictory and inconsistent." In making these findings, the ALJ pointed to: Plaintiff's ability to take his daughter to the park and outside to play; his ability to take his daughter to Seattle Children's Hospital for medical treatment from 2022-2023; his ability to remodel his mother-in-law's plumbing; his ability to drive; Plaintiff's testimony that his friends would come over to his house and give him marijuana; his previous ability to work for extended periods; his ability to attend in-person therapy sessions in 2017 and 2018;  and inconsistent treatment, absence of treatment; and improvement with treatment..

The ALJ failed to provide clear and convincing reasons to discount Plaintiff's symptom testimony. As an initial matter, it appears Plaintiff's credibility was at least partially evaluated based on the ALJ's mistaken belief that he testified that he could not leave his house. This is problematic because Plaintiff did not testify that he "could not leave his house." Both his testimony and the record indicate that Plaintiff has expressed that it is difficult for him to leave the house, but it is clear he has left the house. When asked if he is able to do the shopping and run errands, he stated that his fiancé does most of those things, but that he recently attended his daughter's dental appointment along with his fiancé. When asked whether he has treatment goals of "leaving the house and doing those types of things?", Plaintiff responded, "[y]eah, that's one of my goal. I have a hard time even just going on the porch. And we're working on that too." When filling out his application, Plaintiff wrote, "[l]eaving the house is extremely difficult. It is a time of stress and anxiety often marked with panic attacks." He later wrote that he goes out on his porch 3-4 times a week and leaves the house once a month. It was error for the ALJ to find that Plaintiff's allegations and statements were contradictory

and inconsistent, based on testimony that was not actually offered by Plaintiff.

**a. Activities**

A claimant's daily activities may support an adverse credibility finding in two instances: (1) the claimant's activities contradict other testimony; or (2) the claimant is able to spend a significant part of his day engaged in physical functions that are transferable to a work setting. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). As the Seventh Circuit noted, "The critical differences between activities of daily living and activities in a full-time job are that a person has more flexibility in scheduling the former than the latter, can get help from other persons ..., and is not held to a minimum standard of performance, as she would be by an employer. The failure to recognize these differences is a recurrent, and deplorable, feature of opinions by administrative law judges in social security disability cases." *Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012) (citations omitted).

Here, the ALJ discounted Plaintiff's credibility based on some of Plaintiff's activities. This was in error. The ALJ noted that Plaintiff "enjoyed taking his daughter to the park" and outside to play, citing to AR 379 and AR 400. However, AR 379 contains no mention of going to park. AR 400 does not indicate whether Plaintiff and his daughter's time outside took place in a backyard or other private setting, or a public place with other people nearby. Moreover, it is not clear from the record whether, during Plaintiff's time outside with his daughter and taking her to the park, there were other people around when he was able to do these activities.

The ALJ also found that he "was able to take his daughter from Ellensburg, WA, to Seattle Children's Hospital for medical treatment from 2022 to 2023." But treatment notes show that this was not an easy task for Plaintiff. He stated to his provider that "being in Seattle again after all these years has been a little worried because of the anxiety that I get around crowds of people and lots of stimulating stuff going on around me.'" AR 660. On March 31, 2023, Plaintiff's treatment notes state: "'I have been feeling and thinking about the anxiety that I have been

feeling about going over to the West Side for my daughter and what she is needing and I have been working to use what I have been learning and that covers it for the most part, but I still have moments of high anxiety and struggle with how to manage it.'" AR 700. Further, it is unclear from the record whether he actually traveled to and attended his daughter's appointment in Seattle or whether he was discussing the appointment in treatment because he was worried about it and trying to prepare for it.

"The ALJ is responsible for studying the record and resolving any conflicts or ambiguities in it." *Diedrich v. Berryhill*, 874 F.3d 634, 638 (9th Cir. 2017). If the ALJ intended to rely on Plaintiff taking his daughter to the park and to play outside, as well as his attendance at the appointment in Seattle, the ALJ should have taken the opportunity to further question Plaintiff about the circumstances of these activities, in order to clarify any ambiguities prior to relying on them. Because the record was not clarified, it was error for the ALJ to rely on these activities to discount Plaintiff's credibility.

The ALJ further discounted Plaintiff's credibility because he testified that he uses marijuana when "his friends" come to his house, but that he also testified that he does not interact well with others, does not have any friends, and only interacts with his daughter and fiancé.. In making this finding, the ALJ misstates and misrepresents Plaintiff's testimony. The following is the relevant portion of the transcript from the hearing:

> Q: How often do you use cannabis?
>
> A: Whenever it's available and which isn't very often, because I don't go to the stores and we don't really buy it. Somebody – usually a friend of ours comes over. Well, might not be a friend of mine but a friend of [fiancé] will come over and they'll have some and they share.
>
> Q: How often do your friends come over?

A: Not very often. I don't really have any. So [fiancé] has a friend over maybe a couple times –

Q: Okay.

A: -- in the past couple months.

AR 63.

It is clear from the testimony that Plaintiff was not testifying that "his friends" come over to his house. Further, the record is clear that Plaintiff struggles to make friends, does not have friends, and has difficulty being around others. *See*, AR 307, 335, 367-68, 574, and 630. The ALJ erred in finding Plaintiff's testimony contradictory and inconsistent for this reason.

The ALJ also discounted Plaintiff's credibility because his ability to help his mother with her plumbing proved that Plaintiff's symptoms were not as severe as alleged and that he was able to leave the house and engage with others. This is not clear and convincing reason to discount Plaintiff's symptom testimony because Plaintiff's ability to interact with family members and go to his mother-in-law's house does not equate to being in public, interacting with others outside of his family members, or able to engage in full-time work.

Finally, the ALJ pointed to Plaintiff's ability to drive as a reason to discredit his statements regarding problems with memory and concentration. As support for this finding, the ALJ notes that driving is a complex task made up of external and internal stimuli. However, the record indicates that Plaintiff would leave the house only about once a month. At the hearing, Plaintiff testified to difficulty with "getting into the car and – and driving it." AR 55-56. Further, Plaintiff testified that his focus and concentration can be affected by what is going on around him, but if he is alone in a quiet room, he can concentrate fairly well. The ALJ did not ask Plaintiff whether he had difficulties concentrating while driving, and if so, how he managed them. Plaintiff's ability to occasionally drive does not, on its own, indicate that Plaintiff would be able to maintain concentration to complete full-

time work.

**b. Treatment and Medication**

The ALJ also found that Plaintiff's treatment was not consistent with his reports and alleged symptoms. This was in error. The ALJ discounted Plaintiff's credibility because Plaintiff was not taking mental health medications; he was able to attend in-person mental health treatment 2017-2018; he stopped attending treatment in January of 2018, and did not return to treatment until March of 2021; he has never been hospitalized for his mental health symptoms or sought emergency room treatment for his panic attacks; most mental status exams indicate little or no abnormality; and because Plaintiff reported significant improvement with treatment. AR 24.

First, the record does not support the ALJ's finding that Plaintiff's status examinations showed "little or no abnormality." On August 3, 2017, Plaintiff's affect was flat, his mood was anxious and guarded, and his motor was hypoactive and tense (AR 442-43); on October 3, 2017, his affect was dysthymic, restricted range (AR 632); on October 31, 2017, his mood was anxious and depressed and his affect was congruent with mood and content and constricted, he also had markedly reduced eye contact (575); on November 28, 2017, his mood was depressed, irritable and anxious and his affect was constricted (523); on December 26, 2017, his mood was anxious and depressed and his affect was congruent with his mood, and his behavior was engaged an cooperative but reserved and he had poor eye contact (485); on February 25, 2022, Plaintiff's affect was "anxious, with [Plaintiff] slowly rocking back and forth during exam" (AR 413); and on August 17, 2022, he presented with a "bright/anxious affect" (AR 660). The majority of Plaintiff's status examinations cannot reasonably be described as little to no abnormality" and it was error for the ALJ to make that finding. *See Regenitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1299 (9th Cir. 1999) (observations of "tearful and sad" and "blunted affect" do not comprise a "benign mental status

exam”).

Next, the ALJ misrepresents and misstates the record when it found Plaintiff reported significant improvement with treatment. For example, the ALJ cites a treatment note that states “‘I am doing better with the anxiety, but not a whole lot better, it’s a slow process for me.’” AR 407. The ALJ erred in considering this note to reflect “significant improvement.” Further, as the courts have emphasized while discussing mental health issues, it is error for an ALJ to reject a claimant’s testimony merely because symptoms wax and wane in the course of treatment. *Garrison v. Colvin*, 759 F.3d 995, 1017–18 (9th Cir. 2014). Cycles of improvement and debilitating symptoms are a common occurrence, it is error to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working. *See, e.g., Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001) (“That a person who suffers from severe panic attacks, anxiety, and depression makes some improvement does not mean that the person’s impairments no longer seriously affect her ability to function in a workplace.”). As the Eighth Circuit noted, references in the record to improvement in a claimant’s anxiety and depression must also be interpreted with an awareness that improved functioning while being treated and while limiting environmental stressors does not always mean that a claimant can function effectively in a workplace. *Hutsell v. Massanari*, 259 F.3d 707, 712 (8th Cir. 2001).

The ALJ discounted Plaintiff’s symptoms and credibility because there were gaps in treatment. AR 24-25. This was in error. Plaintiff engaged in mental health counseling in 2015, from October 2017 through January of 2018, and 2021 through 2023. Plaintiff testified that he had a “hard time finding someone to talk to that’s not overly aggressive. Like the last person, I had to ask for a new person.” Plaintiff went on to testify that he had more success attending with his counseling treatments once he was able to attend them virtually. *Id.* The ALJ concluded there

was no evidence to support that Plaintiff attempted to find a new therapist between 2018 and 2021, but it failed to assess whether Plaintiff's conditions could impact his ability to seek out and maintain treatment. On April 21, 2021, Rebecca Palmer, LICSW, noted that Plaintiff's condition impacts his ability to make and keep appointments; that his condition impacts his sleep, concentration and memory recall; that his mental condition limits his ability to work, look for work, or prepare for work. AR 674-75. It was error for the ALJ to rely on gaps in treatment to discount Plaintiff's credibility, without considering Ms. Palmer's assessment that his condition impacts his ability to make and keep appointments.

Finally, the ALJ discounted Plaintiff's statements and symptoms because he was not taking any medications. This was in error. The record shows that Plaintiff was prescribed a variety of medications, but they were not helpful. Further, notably, Dr. Mitchell found that due to the nature and duration of Plaintiff's illness and the interventions that had previously been deployed, it was "reasonable to conclude that the claimant has a low probability of responding favorably to further evidence-based treatment." AR 414.

**c. Prior employment history**

The ALJ erred in discounting Plaintiff's credibility based on his prior work history. The Ninth Circuit has instructed that "substantial gainful activity means more than merely the ability to find a job and physically perform it; it also requires the ability to hold the job for a significant period of time." *Gatliff v. Comm'r of Soc. Sec. Admin.*, 172 F.3d 690, 694 (9th Cir. 1999) (noting that claimant's 15 years of working in jobs generally lasting no more than two months did not amount to substantial gainful activity). Though Plaintiff was able to hold two jobs for an extended period of time nearly a decade prior, since that time, there is no evidence that Plaintiff has been able to maintain gainful employment for any extended period of time. Further, his longest period of employment was working at a shipyard with his brother-in-law, which gave him an "anchor." AR 574. Moreover,

when Plaintiff worked, his anxiety increased. AR 105 ("Reports that he was teased at his last job so he quit."); AR 439 ("He initially excelled at work but after being compared to a school shooter once again he stopped attending and has not worked since.").

**2. <u>Assessment of Medical Opinions</u>**

In evaluating medical opinion evidence, the ALJ considers the persuasiveness of each medical opinion and prior administrative medical finding from medical sources. 20 C.F.R. § 416.920c(a) and (b). The ALJ is required to consider multiple factors, including supportability, consistency, the source's relationship with the claimant, any specialization of the source, and other factors (such as the source's familiarity with other evidence in the file or an understanding of Social Security's disability program). 20 C.F.R. § 416.920c(c)(1)-(5).

Supportability and consistency of an opinion are the most important factors, and the ALJ must articulate how they considered those factors in determining the persuasiveness of each medical opinion or prior administrative medical finding. 20 C.F.R. § 416.920c(b)(2). The ALJ may explain how they considered the other factors, but is not required to do so, except in cases where two or more opinions are equally well-supported and consistent with the record. *Id.*

Supportability and consistency are further explained in the regulations:

> (1) Supportability.
> The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.
> (2) Consistency.
> The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

*Id.*

Here, the ALJ found Dr. Kester's mental residual functional capacity assessment the most persuasive and Dr. Comrie's assessment to be partially persuasive. Neither of these providers examined Plaintiff. The ALJ discounted the opinions of three evaluating medical professionals, Dr. Genthe, Dr. Knapp, and Dr. Mitchell, as well as several treatment notes made by providers throughout the record.

**a. Dr. Genthe**

Dr. Genthe opined that Plaintiff had marked to severe impairment in several areas of basic work activity and rated the combined impact of all of his mental impairments as "severe." Dr. Genthe noted that Plaintiff's speech was limited to only direct succinct answers to questions and that he did not provide spontaneous input to keep the conversation going; that his thought process and content were not within normal limits; he had significant difficulties following the conversation, that his abstract thought was not within normal limits; and that his insight and judgment were not within normal limits. Dr. Genthe ultimately opined that "from a psychological perspective, due to the chronic nature of [Plaintiff's] symptoms, his prognosis is viewed as poor. It is unlikely that his conditions will improve to the point of his being able to resume normal work activities within the next 12 months."

The ALJ erred in finding that Dr. Genthe's opinion was not persuasive. Dr. Genthe's conclusions are consistent and supported by the longitudinal record.

**b. Dr. Knapp**

In August of 2017, Dr. Knapp opined that Plaintiff would have marked limitations when it came to adapting to changes in routine work settings, maintaining appropriate behavior in a work setting, performing activities within a schedule, maintaining regular attendance, and being punctual within customary tolerances without special supervision. Dr. Knapp also found that Plaintiff would have severe limitations communicating and performing effectively in a work

setting, completing a normal workday and workweek without interruptions from psychologically based symptoms. *Id*.

The ALJ found that Plaintiff's ability to sit through an evaluation and engage in a pattern assessment with Dr. Knapp did not reflect significant deficits caused by severe anxiety or problems regarding Plaintiff's ability to interact with the doctor. This conclusion is not supported by the record. Dr. Knapp opined that Plaintiff was "cooperative but distant"; his "mood was anxious" and "guarded"; his "affect was flat"; his memory was not with normal limits; there were indications of impaired social judgment; and that his motor was hypoactive and tense.

The ALJ erred in finding that Dr. Knapp's opinion was not persuasive or supported by the record. Rather, the record is consistent that Plaintiff struggles with social interaction and would struggle with full-time work.

**c. Dr. Mitchell**

Dr. Mitchell evaluated Plaintiff in-person and reviewed Plaintiff's incomplete SSA-3373. Dr. Mitchell concluded that Plaintiff would have "substantial difficulty" in all areas of mental function. He opined that Plaintiff appeared to meet the criteria of Autism Spectrum Disorder. During the evaluation, Dr. Mitchell noted that Plaintiff's affect was" anxious, with claimant slowly rocking back and forth during exam." While Dr. Mitchell noted that Plaintiff was open and cooperative during the examination and there was no specific indication of malingering or factitious behavior during the exam, he ultimately found that due to the nature and duration of Plaintiff's illness and the interventions that had previously been deployed, it was "reasonable to conclude that the claimant has a low probability of responding favorably to further evidence-based treatment."

The ALJ's evaluation of Dr. Mitchell's opinion is not supported by substantial evidence. On the contrary, Dr. Mitchell's opinion is supported by and consistent with the record. The ALJ relied on Plaintiff's work history and activities to discount Dr. Mitchell's opinion, which , as set forth above, is in error. Dr.

Mitchell based his opinion on the clinical interview, review of available records, a thorough review of Plaintiff's social and occupational history, a thorough review of the nature and course of Plaintiff's illness, and the results of his psychological examination which included: measures of recent and working memory, measures requiring a response to direction from the examiner, measures involving multi-step commands and concentration, frustration tolerance, and working memory, measures involving simple multi-step commands and concentration.

**VIII. Conclusion**

Here, when Plaintiff's testimony is properly considered, and the opinions of Drs. Genthe, Knapp, and Mitchell are given proper weight, it is clear the ALJ would be required to find Plaintiff disabled on remand. As such, there is no need to develop the record or convene further administrative proceedings and remand for an immediate award of benefits is appropriate. *See Garrison v. Colvin*, 759 F.3d 995, 1021 (9th Cir. 2014).

Accordingly, **IT IS HEREBY ORDERED:**

1. For docket purposes, Plaintiff's Opening Brief, ECF No. 7, is **GRANTED.**

2. For docket purposes, the Commissioner's Response Brief, ECF No. 9, is **DENIED.**

3. The decision of the Commissioner is **REVERSED** and **REMANDED** for an immediate award of benefits.

4. Judgment shall be entered in favor of Plaintiff and against Defendant.

**IT IS SO ORDERED**. The District Court Executive is hereby directed to file this Order, provide copies to counsel, and **close** the file.

**DATED** this 12th day of November 2026.

Stan Bastian
Chief United States District Judge